**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER HAMMOND**, on behalf of himself and all others similarly situated, | : | *Electronically filed* |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No.:** 2:23-cv-844 |
| **v.** | : | |
| | : | |
| **PITTSBURGH FURNITURE RENTAL CO., d/b/a, PITTSBURGH FURNITURE LEASING AND SALES, and JAMES R. SCHOMAKER, both jointly and severally,** | : | |
| | : | |
| | : | |
| | | |
| **Defendants.** | | |

## CLASS AND COLLECTIVE ACTION COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Christopher Hammond, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire, who files the within Class and Collective Action Complaint against Defendants, Pittsburgh Furniture Rental Co., d/b/a, Pittsburgh Furniture Leasing and Sales, ("Pittsburgh Furniture") and James R. Schomaker ("Mr. Schomaker", collectively "Defendants"), both jointly and severally, of which the following is a statement:

## PARTIES

1.      Plaintiff, Christopher Hammond ("Mr. Hammond"), is an adult individual who currently resides at 642 Princeton Boulevard, Wilkinsburg, PA 15221.

2.      Defendant, Pittsburgh Furniture Rental Company d/b/a Pittsburgh Furniture Leasing and Sales ("Pittsburgh Furniture") is a corporation with a place of business located at 1200 Chateau Street, Pittsburgh, PA 15233.

3.      Defendant, James R. Schomaker ("Mr. Schomaker"), is an adult individual residing at 2420 Nicholson Road, Sewickley, PA 15143.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper as Plaintiff brings this lawsuit under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* (hereinafter "the FLSA"), the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. §333.101, *et seq.* (hereinafter "the PMWA"), and the Wage Payment and Collection Law, (hereinafter "WPCL"), 43 P.S. §260.1, *et seq.*, Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963,

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Defendant corporation's principal place of business is in the Western District of Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

7.      Further, Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## INTRODUCTION

8.      Plaintiff brings this action to recover damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (hereinafter "the FLSA"), the Pennsylvania Minimum Wage Act, 43 Pa.

Stat. Ann. § 333.101, *et seq.* (hereinafter "the PMWA"), the Wage Payment and Collection Law, (hereinafter "WPCL"), 43 P.S. § 260.1 et seq., or, alternatively, the common law of Pennsylvania.

9.      Plaintiff alleges that the Defendants willfully and purposefully failed to pay the Plaintiff, and those similarly situated to him, wages, including straight wages and overtime wages, in violation of state and federal laws.

10.      Plaintiff seeks, for himself and those similarly situated, back wages (including straight time and overtime), liquidated damages, emotional distress, reasonable attorneys' fees, and costs of this action from Defendants.

11.      Defendants willfully and purposely refused to compensate Plaintiff and others similarly situated for thirty (30) minutes per day for lunch time, which was deducted from every paycheck.

12.      Defendants did not posses a time keeping system to log actual time spent working.

13.      Defendants deducted thirty (30) minutes of time each day regardless of whether employees took their lunch time, ate while working or were unable to eat lunch at all.

14.      The unpaid wages, including straight time and overtime, consist of 2.5 hours per week for the Plaintiff and similarly situated individuals.

## SUMMARY OF CLASS CLAIMS

15.       Plaintiff brings this action as a collective action to recover unpaid wages, including straight time and overtime, pursuant to the FLSA.

16.      Specifically, Plaintiffs bring this action on behalf of the following similarly situated persons:

> All current and former hourly employees who have worked for Defendants as truck drivers or warehouse workers within the statutory period covered by this Complaint and elect to opt-in to this

action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

17.     In addition, Plaintiff brings this action as a state-wide class action to recover unpaid wages, including straight time and overtime, pursuant to the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.101, *et seq.*, the Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, or, alternatively, the common law of Pennsylvania.

18.     Specifically, Plaintiff brings this action on behalf of the following similarly situated persons:

> All current and former hourly employees who have worked for Defendants in the Commonwealth of Pennsylvania as truck drivers or warehouse workers within the statutory period covered by this Complaint pursuant to Pennsylvania State Laws (the "PA Class").

19.     The Collective class and the PA class are collectively referred to as the "Classes."

20.     Plaintiff alleges on behalf of himself and the Collective class that they are entitled to unpaid straight time wages from Defendants for the hours that were illegally deducted for lunches, entitled to liquidated damages pursuant to the FLSA, and entitled to damages for emotional distress.

21.     Plaintiff alleges on behalf of himself and the PA class that Defendants violated Pennsylvania Law by failing to comply with the overtime provisions of the PMWA and by failing to pay appropriate wages to the PA Class pursuant to their employment contract. To the extent that Defendants deny a contract to pay Plaintiff and the PA Class appropriate wages under the WPCL, Plaintiff alternatively alleges on behalf of himself and the PA class that Plaintiffs are entitled to payments from Defendants under theories of unjust enrichment and quantum meruit.

## <u>INDIVIDUAL CLAIMS - FACTUAL ALLEGATIONS</u>

a. <u>Plaintiff's Individual Claims for Racial Discrimination, Hostile Work Environment, Retaliation and Wrongful Termination</u>.

22.     Mr. Christopher Hammond ("Mr. Hammond") initiated employment with Pittsburgh Furniture around February 2020 as a Warehouse Worker and Truck Driver.

23.     Mr. Hammond was eventually promoted to the position of Dock Manager in or around May of 2022.

24.     Mr. Hammond is an African American and member of a protected class.

25.     Early on in Mr. Hammond's employment with Pittsburgh Furniture, the Owner, Mr. Schomaker, began regularly making racially charged and insensitive comments.

26.     For example, if warehouse employees were listening to rap music, he would say, "Hey, I don't want you listening to that thug music."

27.     On other occasions he would say, "I don't want you guys walking around with your hoods on and your pants pulled down looking like thugs and hoodlums."

28.     Mr. Schomaker would make these comments regularly.

29.     Mr. Hammond and other African American employees found these statements to be offensive and containing racially charged language.

30.     However, the employees could not report Mr. Schomaker's comments to Human Resources because there was no Human Resources department to report to, only Mr. Schomaker.

31.     Thus, Mr. Hammond and his coworkers tolerated the racist comments for a long period of time for fear of being terminated in retaliation should they confront Mr. Schomaker.

32.     Around November 2022, there was an incident at work wherein Mr. Schomaker made another derogatory comment directed towards African American employees.

33.     Two of Mr. Hammond's coworkers, Ray and Thomas Brown, had an aunt who passed away.

34.     A day or so prior to Ray and Thomas taking leave for bereavement, Mr. Schomaker said to them in the presence of Mr. Hammond, "Carry that ramp like you are going to carry the coffin."

35.     Mr. Schomaker also stated to Thomas Brown that he looked like a hoodlum for wearing a ski mask and hood.  This comment occurred during the same conversation.  Mr. Schomaker's tone had

36.     Mr. Hammond was deeply upset by Mr. Schomaker's comments and had had enough.

37.     In the presence of Mr. Schomaker's second in command, Bonnie Stewart ("Ms. Stewart"), Mr. Hammond made a complaint to Mr. Schomaker, stating, "You always make these comments calling us n*ggers and thugs, you can't be doing this."

38.     Ms. Stewart agreed and told Mr. Schomaker he should not be making such comments.

39.     Mr. Schomaker shrugged off Mr. Hammond's complaint and no further corrective action was taken.

40.     There was no Human Resources department for Mr. Hammond to report to and thus, he could only make his complaint directly to Mr. Schomaker or Ms. Stewart.

41.     On the same day, Ms. Stewart texted Mr. Hammond and apologized for Mr. Schomaker's language and informed him that he could file a grievance.

42.     Mr. Stewart told Mr. Hammond that she does not see color.

43.    Mr. Hammond did not file a grievance at that time because he feared that he would lose his job as a potential consequence of filing a grievance against Mr. Schomaker, the Owner and CEO of the company.

44.    Thereafter, Mr. Schomaker engaged in a pattern and practice of discrimination and retaliation, in that he would frequently discipline Plaintiff for minor issues, subjected him to hyper scrutiny.

45.    In early January 2023, Mr. Hammond was given a one-day suspension by Mr. Schomaker due to Mr. Hammond allegedly leaving work early one time when he mistakenly believed he was permitted to do so.

46.    When Mr. Hammond returned to work, Mr. Schomaker told him he "better not have an attitude."

47.    Mr. Hammond once again brought up Mr. Schomaker's racist comments and claimed that he has been retaliated against.  In response, Mr. Schomaker stated, "Oh Chris, I am sick of this! You are fired."

48.    No investigative or corrective action was taken by Defendants regarding Mr. Hammond's complaints or termination.

49.    Mr. Hammond was terminated on January 11, 2023.

50.    As such, Mr. Hammond was terminated in retaliation for making complaints about regular, severe and pervasive racial discrimination and harassment.

51.    Mr. Hammond was detrimentally affected by Mr. Schomaker's harassment, as any reasonable person would have been in like circumstances.

52.    The detrimental effect culminated ultimately in Mr. Hammond's termination in retaliation for his complaints.

53.     Indeed, as Mr. Hammond stated in his complaints, Mr. Schomaker's regular use of the words "thug" and "hoodlums" in describing African American employees were clearly racially charged and used as substitutions for more unambiguously severe racial epithets.  Additionally, Mr. Hammond stated that the disrespectful comments about the funeral services was motivated by Mr. Schomakers dislike for and his frequent disrespect towards young African American males. As he did not speak that way towards Caucasian comparators.

54.     Such racially charged language is sufficient to alter the conditions of employment and create a hostile work environment in violation of Title VII, Section 1981 and the PHRA.

55.     Mr. Hammond's termination constituted discrimination and retaliation for engaging in the protected activity of reporting racial discrimination by Mr. Schomaker in violation of Title VII, Section 1981 and the PHRA.

**b.  <u>Failure to Pay Overtime and Straight Time Wages for Lunch Breaks</u>.**

56.     At the onset of Plaintiff's employment, Plaintiff and Defendants entered into both an oral and written employment contract where Defendants agreed to pay the Plaintiff an hourly wage for all hours worked, including working during lunch breaks.

57. Defendants are in possession of all employment agreements, documents, and communications.

58.     Defendants unilaterally amended Plaintiff's and Class Members' paychecks to remove 2.5 hours per week for lunch breaks in breach of the employment agreement.

59.     Since Plaintiff and Class Members worked more than forty hours per week, Plaintiffs and Class Members were not compensated for up to 2.5 hours per week for hours worked during lunch breaks.

60.    As of the filing of this Complaint, Plaintiff and Class Members have yet to be compensated for a minimum of 2.5 hours of overtime pay per week pursuant to their oral and written employment agreement.

61.    Further, during weeks when Plaintiff and/or Class Members did not work more than forty hours, Plaintiff and Class Members were also not compensated for up to 2.5 hours per week of straight time for hours worked during lunch breaks.

62.    As of the filing of this Complaint, Plaintiff and Class Members have yet to be compensated for a minimum of 2.5 hours of straight time wage pay per week for hours worked during lunch breaks pursuant to their oral and written employment agreement.

63.    Defendants willfully and purposely refused to compensate Plaintiff and others similarly situated for thirty (30) minutes per day for mandatory lunch breaks, which was deducted from every paycheck.

64.    Defendants did not have a clock in or clock out system.

65.    Defendants deducted thirty (30) minutes of time each day regardless of whether employees took their lunch time, ate while working or were unable to eat lunch at all.

## CLASS ALLEGATIONS

66.    Plaintiff brings this action on behalf of himself and the FLSA Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).  Plaintiff also brings this action on behalf of himself and the PA Class as a class action pursuant to Fed. R. Civ. P. 23 for claims under Pennsylvania State Laws.

67.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b). The claims brought under Pennsylvania Laws may be pursued by all similarly situated persons who do not opt out of the PA Class pursuant to Fed. R. Civ. P. 23.

68.    Excluded from the Classes are Defendants, Pittsburgh Furniture Leasing and Sales and Mr. Schomaker, as well as their past and present officers, any judge who presides over this action, and any attorneys who enter their appearance in this action.

69.    Plaintiff reserves the right to expand, limit, modify, or amend the Classes' definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, among other things, changing circumstances and new facts obtained during discovery.

70.    Questions of law and fact common to the Classes, predominate over any issues involving only individual class members. The primary issues concern: Defendants' failure to compensate drivers for a minimum of twenty minutes of pre-load inspection and post-inspection time at a rate of at least minimum wage, including straight time and overtime, in violation 29 U.S.C. §201, *et seq*. of the FLSA, 43 Pa. Stat. Ann. § 333.101, *et seq.* of the PMWA, 43 P.S. § 260.9 of the Wage Payment and Collection Law, or alternatively Pennsylvania common law.

71.    This action has been brought, and may properly be maintained, as a collective action or class action pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and  Fed. R. Civ. P. 23 because of a well-defined public interest in this litigation:

72.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  Upon information and belief, the members of Class are so numerous that individual joinder of all class members is impracticable because there are dozens of persons where Defendants have failed to compensate for a minimum of twenty minutes of pre-load inspection and post-inspection time in violation of DOT regulations.

73.    The identities of all class members are readily ascertainable from the records of Defendants.

74. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves questions of law and fact that are common to the class members and predominate over questions affecting only individual Class Members. Such common questions include, but are not limited to:

a.      Whether Defendants failed to compensate employees for a minimum of 2.5 hours per week for all hours worked during "lunch breaks", both overtime and straight time, in violation of 29 U.S.C. §201, *et seq*. of the FLSA, 43 Pa. Stat. Ann. §333.101, *et seq.* of the PMWA, and 43 P.S. §260.9 of the Wage Payment and Collection Law.

b.      Whether Plaintiff and the Class are entitled to relief in the forms, including but not limited to, declaratory or injunctive in nature.

75. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The Plaintiff's claims are typical of the other class members' claims because, among other things, all class members were comparably injured.  The Plaintiff and all members of the Plaintiff's Class have claims arising out of the Defendants' common uniform course of conduct complained of herein.

76. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the classes will not be harmed. Furthermore, the interests of the class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

77.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

78.    **Superiority − Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

79.    **Ascertainability** – all members of the proposed class are ascertainable.  Defendants have access to Class Members' names and addresses affected by the Defendants' wrongful conduct described herein.

## COUNT I
## FAILURE TO PAY OVERTIME WAGE IN VIOLATION OF
## THE FAIR LABOR STANDARDS ACT
## 29 U.S.C. § 206, *et seq.*

*Plaintiff and Collective Class Members v. Pittsburgh Furniture and James Schomaker, both jointly and severally*

80.    Plaintiff incorporate the allegations contained in the paragraphs, above, as if fully set forth at length herein.

81.    Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207." *De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 306 (3d Cir. 2003).

82.    Plaintiff and the Collective Class Members are "employees" as defined by 29 U.S.C. §203(e)(1) of the FLSA.

83.    Defendants are an "employer" as defined by 29 U.S.C. §203(d) of the FLSA.

84.    Defendants failed to compensate Plaintiff and the Collective Class members for a minimum of 2.5 hours of overtime pay per week for all hours worked during mandatory lunch breaks during weeks when Plaintiff and/or Collective Class Members worked more than 37.5 hours in violation of 29 U.S.C. §207.

85.    Plaintiffs and the Collective Class Members have yet to be fully and properly compensated for overtime hours worked during lunch hours.

86.     Pursuant to the FLSA, once a plaintiff establishes a right to payment "of their…
unpaid minimum wages," liquidated damages in an "additional equal amount" is warranted. 29
U.S.C. § 216(b).

87.     Furthermore, the FLSA's liquidated damages provisions "is not penal in nature but
constitutes compensation for the retention of a workman's pay which might result in damages too
obscure and difficult of proof for estimate other than by liquidated damages." *Andrews v. Cross
Atlantic Capital Partners, Inc*., 158 A.3d 123, 134 (Pa. Super. 2017) (quoting *Brooklyn Savings
Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

88.     Further, a corporate officer such as Mr. Schomaker, who participates in wrongful,
injury-producing conduct can be personally liable, that is, individually liable for torts committed
while acting within the scope of his or her employment by the corporation. *Loeffler v. McShane*,
539 A.2d 876 (Pa. Super. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1186 (Pa. Super.
1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. 1977); *Tayar v. Camelback
Corp. Inc.*, 957 A.2d 281 (Pa. Super. 2008). Mr. Schomaker is personally liable for FLSA
violations and cannot shield himself behind a corporation when he is an actual participant in the
tort. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3rd Cir. 1978).

89.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton,
willful, and so outrageous as to shock the conscience.

90.     As a direct and proximate result of the aforementioned conduct, Plaintiff and the
Collective Class suffered actual damages, including, but not limited to, lost overtime wages in
amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs,
emotional distress in the past, present and future, other compensation pursuant to 29 U.S.C. §
216(b), and such other legal and equitable relief as the Court deems just and proper.

## COUNT II
## FAILURE TO PAY OVERTIME WAGE IN VIOLATION OF
## THE PENNSYLVANIA MINIMUM WAGE ACT

*Plaintiff and PA Class Members v. Pittsburgh Furniture and James Schomaker, both jointly and severally*

91.     Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

92.     The PWMA states that overtime pay is required "for hours in excess of forty hours in a workweek. 43 Pa. Stat. Ann. §333.104(c). Further, the PMWA requires the same time and a half payments for "all hours worked past 40 in a week." *Ellis v. Edward D. Jones & Co., L.P.,* 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007) (citing 29 U.S.C.S. 207(a), 43 Pa. Stat. Ann. 333.104(c)).

93.     Because the PMWA "substantially parallels" the FLSA, this Court should look to the federal courts' interpretation of the FLSA when analyzing claims under the PMWA. *Philadelphia Metal Trades Council v. Konnerud Consulting W.*, A.S., No. CV 15-5621, 2016 WL 1086709, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Ford-Greene*, 106 F. Supp. 3d at 610–13 (applying the Third Circuit's analysis in Davis to the plaintiff's claims under both the FLSA and PMWA).

94.     Thus, "plaintiff-employees asserting PMWA violations must substantiate their claims by demonstrating that they performed work for which they were not paid . . . and that the defendant-employer had actual or constructive knowledge of the plaintiff's overtime work." *Alers v. City of Philadelphia*, 919 F. Supp. 2d at 560.

95.     Defendants failed to compensate Plaintiffs and PA Class members for a minimum of 2.5 hours of overtime pay per week for hours worked during lunch hours during weeks when Plaintiff and PA Class Members worked more than 37.5 hours in violation of 43 Pa. Stat. Ann. §333.104(c).

96.    Plaintiff and the PA Class Members have yet to be fully and properly compensated for all straight time and/or overtime hours worked during lunch hours.

97.    Further, a corporate officer such as Mr. Schomaker, who participates in wrongful, injury-producing conduct can be personally liable, that is, individually liable for torts committed while acting within the scope of his or her employment by the corporation. *Loeffler v. McShane*, 539 A.2d 876 (Pa. Super. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1186 (Pa. Super. 1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. 1977); *Tayar v. Camelback Corp. Inc.*, 957 A.2d 281 (Pa. Super. 2008). Mr. Schomaker is personally liable for PMWA violations and cannot shield himself behind a corporation when he is an actual participant in the tort. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3rd Cir. 1978).

98.    As a direct and proximate result of the aforementioned conduct, Plaintiff and the PA Class suffered actual damages, including, but not limited to, lost straight time and overtime wages in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs, other compensation pursuant to the PMWA, and such other legal and equitable relief as the Court deems just and proper.

99.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

## COUNT III
### FAILURE TO PAY WAGES FOR OVERTIME AND STRAIGHT TIME IN VIOLATION OF THE PENNSYLVNIA WAGE PAYMENT AND COLLECTION LAW
### 43 P.S. §260.1 *et seq*

*Plaintiff and PA Class Members v. Pittsburgh Furniture and James Schomaker, both jointly and severally*

100.    Plaintiff incorporate the allegations contained in the paragraphs, above, as if fully set forth at length herein.

101.    Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

102.    The Pennsylvania WPCL, 43 P.S. §260.1 et seq., however, does not provide "a statutory definition of the term 'employee'." *Frank Burns, Inc. v. Interdigital Communs. Corp*, 704 A.2d 678, 680-81 (Pa Super. 1997).

103.    Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania." *Frank Burns v. Interdigital Communs. Corp*., at 681.

104.    Pennsylvania courts have thus narrowed the definition of employee accordingly: "those who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot." *Id*. Citing *Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995).

105.    The WPCL does not create a right to compensation, but "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (1997), *citing Killian v. McCulloch,* 850 F.Supp. 1239, 1255 (E.D.Pa.1994).

106.    As a company conducting business and employing person(s) in the Commonwealth of Pennsylvania, Defendants are "an employer" within the definition of the WPCL 43 Pa. C.S. §260.1a.

107.    Plaintiff and the PA Class Members, based on the law cited above, were employees of Defendants working within the Commonwealth of Pennsylvania.

108.    Defendants and Plaintiff and Defendants and the PA Class Members entered into an oral and written employment contract where Defendants agreed to pay an hourly wage for all hours worked.

109.    As of the date of the filing of this Complaint, Plaintiff and the PA Class Members have yet to be compensated for all hours worked during lunch hours, including both overtime wages and straight time wages, for a minimum of 2.5 hours per week.

110.    Further, a corporate officer such as Mr. Schomaker, who participates in wrongful, injury-producing conduct can be personally liable, that is, individually liable for torts committed while acting within the scope of his or her employment by the corporation. *Loeffler v. McShane*, 539 A.2d 876 (Pa. Super. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1186 (Pa. Super. 1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. 1977); *Tayar v. Camelback Corp. Inc.*, 957 A.2d 281 (Pa. Super. 2008). Mr. Schomaker is personally liable for WPCL violations and cannot shield himself behind a corporation when he is an actual participant in the tort. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3rd Cir. 1978).

111.    As a direct and proximate result of the aforementioned conduct, Plaintiff and the PA Class suffered actual damages, including, but not limited to, lost straight time and overtime wages in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs, other compensation pursuant to the WPCL, and such other legal and equitable relief as the Court deems just and proper.

112.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

## <u>COUNT IV</u>
## **BREACH OF CONTRACT**

*Plaintiff and PA Class Members v. Pittsburgh Furniture and James Schomaker, both jointly and severally*

113.    Plaintiff incorporate the allegations contained in the paragraphs above as if fully set forth at length herein.

114.    Plaintiff and the PA Class Members were entitled, as part of Defendants' oral employment contract and per DOL guidelines, to be paid for all hours worked.

115.    Defendants were bound by the duty of good faith and fair dealing. As such, Defendants had a duty to compensate Plaintiff and Class Members for all hours worked.

116.    Defendants failed to ensure accuracy of Plaintiff and the Class Members' wage payment information thus depriving him of his earned benefit.

117.    All conditions precedent to recovery have occurred.

118.    As a direct result of this breach of contract, Plaintiff and the PA Class Members have suffered damages as set forth hereinabove.

## <u>COUNT V</u>
## **QUANTUM MERUIT / UNJUST ENRICHMENT**

*Plaintiff and PA Class Members v. Pittsburgh Furniture and James Schomaker, both jointly and severally*
*(Pled in the Alternative)*

119.    Plaintiff incorporate the allegations contained in the paragraphs above as if fully set forth at length herein.

120.    Plaintiff and the PA Class Members had an expectation of payment from Defendants.

121.    Plaintiff and the PA Class Members conferred a benefit upon Defendants.

122.    Defendants appreciated the benefit of Plaintiff and the PA Class Members' time and efforts.

123.    It would be manifestly unjust if the Defendants' acceptance and retention of such benefits were permitted without payment of value to Plaintiff and the PA Class Members.

124.    As a direct and proximate cause of the aforementioned conduct, Plaintiff and the PA Class Members suffered actual damages, including, but not limited to, wage loss, loss of income and are entitled to reimbursement, restitution and disgorgement from Defendants of the value of the benefits conferred by Plaintiff and the PA Class.

<u>COUNT VI</u>
**RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981**
*Individual Plaintiff v. Pittsburgh Furniture and James Schomaker, both jointly and severally*

125.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

126.    42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); *see also*, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

127.    Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

128.    Defendants perpetuated the racial discrimination of Mr. Hammond in the workplace as delineated hereinabove.

129.    Mr. Hammond's supervisor, Mr. Schomaker, regularly used racially charged language at work in reference to African American employees.

130.    Mr. Hammond's Caucasian coworkers were not subjected to this same treatment by Mr. Schomaker.

131.    Defendants were made aware of Mr. Schomaker's use of racially charged language by Mr. Hammond, yet his reports fell on deaf ears and no investigative or corrective action was taken.

132.    On January 11, 2023, Mr. Hammond was subjected to the ultimate adverse employment action when he was terminated and therefore deprived of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

133.    Defendants' actions against Mr. Hammond were undertaken with reckless indifference to his federally protected right to make and enforce contracts irrespective of his race.

134.    As a direct and proximate result of the aforementioned conduct, Mr. Hammond suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

135.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful and so outrageous as to shock the conscience.

WHEREFORE, Mr. Hammond hereby requests that this Court enter judgment in her favor, and against the Defendants, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to such other relief as deemed just and proper.

<u>COUNT VII</u>
**HOSTILE WORK ENVIRONMENT IN**
**VIOLATION OF SECTION 1981**
*Individual Plaintiff v. Pittsburgh Furniture and James Schomaker, both jointly and severally*

136.     Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

137.     To establish a § 1981 claim alleging a hostile work environment based on race, a plaintiff must show that: "(1) the employee suffered intentional discrimination because of his/her race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability, meaning the employer is responsible." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017)

138.     Mr. Demus faced intentionally discriminatory treatment in the form of disparate treatment and a racially hostile work environment, throughout his employment.

139.     The above-mentioned hostile work environment included, but was not limited to, disparate treatment and Mr. Schomaker's use of racially charged language, failure to discipline Mr. Schomaker following Mr. Hammond's reports and complaints of the language, and ultimately, termination from employment.

140.     Defendants retaliated against Mr. Hammond, following his report of the hostile work environment, by suspending and terminating him.

141.     Therefore, Defendants permitted, condoned, and perpetuated the racially hostile work environment which Mr. Hammond was forced to endure, and therefore deprived him of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

142.    Defendants' actions against Mr. Hammond were undertaken intentionally and with reckless indifference to Mr. Hammond's federally protected right to make and enforce contracts irrespective of his race.

143.    As a result of Defendants' racial discrimination against Mr. Hammond, he has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff, Mr. Hammond, hereby requests that this Court enter judgment in her favor, and against the Defendants, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to such other relief as deemed just and proper.

## COUNT VIII
### RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF SECTION 1981
*Individual Plaintiff v. Pittsburgh Furniture and James Schomaker, both jointly and severally*

144.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

145.    The Third Circuit has held that retaliation claims under § 1981 are controlled by the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canada v. Samuel Grossi & Sons*, 49 F.4th 340 (3rd Cir. 2022)    (citing    *CBOCS West, Inc. v. Humphries*, 553 U.S. 442    (2008) (holding    that § 1981 "encompasses claims of retaliation")).

146.    Under the first step of that framework, a Charging Party "must establish a prima facie case by showing '(1) [that he engaged in] protected employee activity; (2) adverse action by

the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

147.    Upon making these showings, the employer then, under step two, has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193.  If the employer meets this burden, the burden then shifts "back to the Charging Party to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.* (quoting *Moore*, 461 F.3d at 342).

148.    In November of 2022, Mr. Hammond engaged in a protected activity under § 1981 by reporting racial discrimination and racially charged language used by his supervisor, as set forth hereinabove.

149.    Mr. Hammond's Caucasian coworkers were not subjected to this same treatment by Mr. Schomaker.

150.    Despite Mr. Hammond's complaint of Mr. Schomaker's abusive conduct, no corrective action or investigation was made.

151.    On January 11, 2023, Mr. Hammond suffered the ultimate adverse employment action of termination.

152.    The temporal proximity of Mr. Hammond engaging in a protected activity and the suspension and the ultimate adverse employment action of termination, with no prior disciplinary action, demonstrates a retaliatory motive by Defendants.

153.    As a direct and proximate cause of the aforementioned conduct, Mr. Hammond suffered actual damages, including but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience, all in the past, present and future.

154.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, reckless and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Mr. Hammond, hereby requests that this Court enter judgment in her favor, and against the Defendants, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC.**

Date: May 18, 2023

By: _/s/ Joshua P. Ward_____
Joshua P. Ward (Pa. I.D. No. 320347)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

*Counsel for Plaintiff and Class Members*